UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDISON C. F.,** | Civil Action No. 20-15455 (SRC) |
| Petitioner, | |
| v. | OPINION |
| **H.O. THOMAS DECKER, et al.,** | |
| Respondents. | |

**CHESLER**, District Judge:

Presently before the Court is the amended petition for a writ of habeas corpus of Petitioner Edison C.F. (ECF No. 11). Following an order to answer, the Government filed responses to the amended petition (ECF Nos. 15, 19), to which Petitioner replied. (ECF No. 17). Also before the Court are the parties' motions seeking to have Petitioner's medical records sealed. (ECF Nos. 12, 18). For the following reasons, Petitioner's amended petition is denied without prejudice, and the parties' motions to seal are granted.

**I. BACKGROUND**

Petitioner is a native and citizen of Colombia who was admitted into the United States as a conditional permanent resident in April 2003. (Document 8 attached to ECF No. 11 at 2). He thereafter became a permanent resident in 2006. (*Id.*). In July 2015, however, Petitioner falsely held himself out as a United States citizen for the purposes of voter registration. (*Id.*). Petitioner was also convicted of multiple criminal infractions in New York in 2017, 2019, and 2020. (*Id.*). In March 2020, Petitioner was therefore taken into immigration custody and placed in removal proceedings both as an alien who had been convicted of multiple crimes involving moral turpitude,

1

and as an alien who had falsely represented himself as a United States citizen. (*Id.*). Since that time, Petitioner has remained detained pursuant to the Government's mandatory detention authority under 8 U.S.C. § 1226(c). Following multiple proceedings, including litigation of Petitioner's motion to terminate proceedings and Petitioner's extension requests, an immigration judge ordered Petitioner removed and denied his applications for relief from removal on October 26, 2020. (ECF No. 15 at 9-11). Petitioner appealed that decision to the Board of Immigration Appeals, and his appeal remains pending at this time. (*See* ECF No. 19 at 1). Petitioner thus remains detained pursuant to § 1226(c) at this time, and has been so detained for approximately eleven months.

While detained at the Bergen County Jail, Petitioner has had multiple interactions with the jail's medical staff. Petitioner received direct medical treatment, such as for mouth, shoulder, hand, and foot injuries on those occasions he complained of such issues; received diagnostic testing; was provided dental treatment; was referred for and ultimately received regular mental health treatment including medications directed at ameliorating the effects of his major depressive disorder and post-traumatic stress disorder which were adjusted as needed. (Document 1 attached to ECF No. 15 at 1-221). Petitioner's medical records thus indicate that, save for on those occasions where Petitioner refused monitoring or treatment, Petitioner received treatment for each issue he raised to the attention of the jail's medical staff, and Petitioner's mental health was regularly monitored and treated. (*Id.*).

In support of his petition and claims of special vulnerability to COVID-19, Petitioner has provided certifications from two doctors, Allen S. Keller, M.D., and Hannah Geller, Ph.D. (Document 2 attached to ECF No. 11; ECF No. 13). In his certification, Dr. Keller opines that Petitioner has a history of traumatic brain injuries, and has had numerous psychiatric illness

including major depressive disorder, post-traumatic stress disorder, and chronic psychotic disorder.  (Document No. 2 attached to ECF No. 11 at 8).  Dr. Keller further opines that he believes Petitioner may also suffer from a chronic psychotic disorder "such as Schizophrenia." (*Id.*).  Dr. Keller ultimately concludes that based on his mental health issues, as well as his obesity and history of smoking and substance abuse issues, Petitioner is at risk of developing a "severe, life-threatening COVID-19 infection" were he to contract the virus. (*Id.* at 9, 22-24).  Dr. Geller largely concurs, finding that Petitioner likely suffers from PTSD, major depressive disorder, an unspecified neurocognitive disorder, and substance abuse issues, which may be exacerbated by his continued detention.  (ECF No. 13).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).  As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

B. Analysis

1. **Petitioner's COVID-19 related claims**

In his habeas petition, Petitioner first argues that his current period of immigration detention has become unconstitutional either because the conditions under which he is currently confined are unduly punitive without a supporting conviction in light of COVID-19, or because the treatment he has received at the facility in which he is detained, when viewed in light of the ongoing COVID-19 situation and Petitioner's pre-existing mental and physical health issues, amounts to deliberate indifference to his medical needs on the part of the Government. In its recent decision in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), the Third Circuit has reiterated the standards to be applied to both of these classes of claims. As the Court of Appeals explained in *Hope*, in evaluating whether an alien's conditions of confinement amount to undue punishment, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish." *Id.* at 325-27. In the absence of a showing that detention facility staff acted with an express intent to punish the petitioner, determining whether conditions amount to unconstitutional punishment requires that the district court "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* In reviewing the conditions and actions of detention officials and their relation to the Government's legitimate interest in detaining aliens awaiting the conclusion of removal proceedings, reviewing courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.*

Given the Government's strong interest in detaining aliens with criminal records who are subject to removal orders and the deference due to the expertise of detention officials, the Third Circuit in *Hope* rejected the argument that detention during the COVID-19 pandemic would amount to unconstitutional punishment where the facility in which the petitioner is housed had taken significant, concrete steps aimed at mitigating the threat posed to detainees, notwithstanding serious pre-existing health conditions which may render those detainees more likely to suffer serious complications should they contract the virus. *Id.* 327-29.

Turning to deliberate indifference medical claims, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the petitioner] must show the Government knew of *and disregarded* an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000).  The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application in *unfamiliar territory*." *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).  Thus, where the Government has taken concrete steps towards mitigating the medical effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the Government cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection should one occur. *Id.* at 330-31.

Given Petitioner's criminal history and order of removal, it is clear that the Government has a legitimate interest in detaining him. As Petitioner has not shown an express intent to punish him on the part of the staff of the Bergen County Jail in which he is detained, to succeed on his claim he must show that his conditions of confinement are arbitrary, purposeless, or excessive and therefore unreasonable in light of the Government's interest in detaining him. *Hope*, 972 F.3d at 325-29; *see also Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007). Having reviewed the considerable steps the facility has taken to alleviate the threat COVID-19 poses to detainees such as Petitioner, which are significantly more protective of detainees than those at issue in *Hope*, this Court finds that Petitioner has failed to make such a showing. Steps the Bergen County Jail has taken to alleviate the threat to vulnerable detainees such as Petitioner include operating significantly under maximum capacity, ensuring there are on site or on call doctors and nursing staff at all times, performing intake screenings for all incoming detainees including COVID-19 testing, housing newly arrived detainees in a separate unit, quarantining infected detainees and providing treatment including hospitalization where warranted, the cohorting of those who have been exposed to infected individuals but have not shown symptoms of COVID-19 for fourteen days, and increased cleaning and sanitization. (*See* Document 1attached to ECF No. 19). Taken together, these actions clearly indicate that the facility has taken significant and concentrated action to address the threat of COVID-19, and that Petitioner's conditions remain rationally related to the Government's interest in detaining him, and that Petitioner is not entitled to relief on his conditions of confinement claim. *Hope*, 972 F.3d at 325-29.

Petitioner is likewise not entitled to relief on his medical claim in light of the specific medical and psychiatric treatment he has received while detained and the concrete steps the facility has taken to protect Petitioner and those like him from COVID-19. In each instance in which

Petitioner raised an issue to the facilities medical staff – be it his mental health needs, injuries, or dental issues, he was either provided medical treatment or applicable medication to address or monitor the issue. (*See* Document 1 attached to ECF No. 16). As nothing Petitioner has provided indicates that medical staff have been deliberately indifferent to any psychiatric or medical need he has brought to their attention, and as the facility has clearly taken ample steps to address COVID-19, Petitioner has failed to show an entitlement to habeas relief on his COVID-related claims. *Hope*, 972 F.3d at 330-31.

**2. Petitioner's prolonged confinement claim**

In his final claim, Petitioner contends that his continued detention under § 1226(c) in the absence of a bond hearing amounts to an unconstitutional application of the statute in light of the Third Circuit's recent decision in *Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 209 (3d Cir. 2020). In *Santos*, the Third Circuit reaffirmed that detention without a bond hearing under § 1226(c) can amount to an unconstitutional application of the statute where the alien's detention becomes so prolonged as to be arbitrary. *Id.* In determining whether detention has become unconstitutionally prolonged, *Santos* instructs courts to look to several factors – the length of detention and the likelihood that detention will continue for a considerable time, the cause for any delays in the underlying immigration proceedings especially where any such delay is the result of bad faith or carelessness by one of the parties, and whether the conditions under which the petitioner is confined are "meaningfully different from [punitive] criminal detention." *Id.* at 210-11. The first factor – the length of detention – is the most important to be considered and is accorded the greatest weight in determining whether continued detention without bond amounts to an unconstitutional application of the statute. *Id.* The Third Circuit, however, rejected a bright

line rule approach, finding that even detention of over a year may pass constitutional scrutiny, as it is only meaningfully different from criminal detention." *Id.* at 210-11; *see also Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018) (finding that detention of over a year was not arbitrary nor an unconstitutional application of § 1226(c)).

In this matter, Petitioner has been detained for approximately eleven months, a length of time which, standing on its own, is not so prolonged as to amount to a denial of Due Process. *Dryden*, 321 F. Supp. 3d at 502. His underlying removal proceedings concluded with relative expediency, with most delays in those proceedings being the result of Petitioner's requests for extensions or his filing of applications for relief. Given that Petitioner filed his appeal of his order of removal several months ago, and the fact that his detention under § 1226(c) will most likely conclude in a relatively short amount of time absent a reversal of his removal order by the BIA, Petitioner's detention under the statute is not likely to continue for an unwarranted period of time.

As this Court has already concluded for the reasons expressed above that Petitioner's conditions of confinement are distinguishable from punitive criminal confinement, and in light of the fact that the remaining factors – length of detention, likely amount of continued detention under the statute, and the reasons for any delays in immigration proceedings – all weigh against a finding that Petitioner's detention has become unconstitutionally prolonged, this Court finds that Petitioner is not entitled to a bond hearing at this time. Petitioner's amended habeas petition is therefore denied. Given Petitioner's interest in maintaining the privacy of his medical records, and the already limited access automatically applicable to immigration habeas matters, however, this Court grants the parties' motions seeking to seal Petitioner's medical records (ECF Nos. 12, 18) in this matter.

## III. CONCLUSION

For the reasons expressed above, Petitioner's amended habeas petition (ECF No. 11) is DENIED WITHOUT PREJUDICE, and the parties' motions to seal Petitioner's medical records (ECF Nos. 12, 18) are GRANTED.  An appropriate order follows.

                               */s/ Stanley R. Chesler*
                               Hon. Stanley R. Chesler,
                               United States District Judge

Dated: February 16, 2021