# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDISON C. F., | Civil Action No. 20-15455 (SRC) |
| Petitioner, | |
| v. | OPINION |
| H.O. THOMAS DECKER, et al., | |
| Respondents. | |

**CHESLER**, District Judge:

Presently before the Court is Petitioner's motion seeking reconsideration of this Court's order and opinion denying his amended habeas petition pursuant to Rule 59(e). (ECF Nos. 22). Also before the Court are Petitioner's motions to seal his medical records (ECF No. 25), for leave to file a reply brief (ECF No. 27), seeking leave for counsel to appear *pro hac vice* (ECF No. 31),[1] and his motion seeking a temporary restraining order (ECF Nos. 28). The Court having considered the motions, the record of proceedings in this matter, Petitioner's briefs in support of his motions (ECF Nos. 23, 29, 32) and the Government's responses to the motions (ECF Nos. 26, 30), and for the reasons expressed below, Petitioner's motions to seal, seeking leave to file a reply, and seeking to have counsel appear *pro hac vice* are granted; and Petitioner's motions seeking reconsideration and a temporary restraining order are denied.

## I. BACKGROUND

---

[1] This Court having considered counsel's motion seeking to have co-counsel appear before this Court *pro hac vice*, and good cause having been shown, that motion is granted.

In November 2020, Petitioner filed his amended petition for a writ of habeas corpus in this matter. (ECF No. 11). Following briefing, this Court issued an order and opinion on February 16, 2021, which denied Petitioner's habeas petition without prejudice. (ECF Nos. 20-21). This Court explained that denial as follows:

> In his habeas petition, Petitioner first argues that his current period of immigration detention has become unconstitutional either because the conditions under which he is currently confined are unduly punitive without a supporting conviction in light of COVID-19, or because the treatment he has received at the facility in which he is detained, when viewed in light of the ongoing COVID-19 situation and Petitioner's pre-existing mental and physical health issues, amounts to deliberate indifference to his medical needs on the part of the Government. In its recent decision in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), the Third Circuit has reiterated the standards to be applied to both of these classes of claims. As the Court of Appeals explained in *Hope*, in evaluating whether an alien's conditions of confinement amount to undue punishment, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish." *Id.* at 325-27. In the absence of a showing that detention facility staff acted with an express intent to punish the petitioner, determining whether conditions amount to unconstitutional punishment requires that the district court "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* In reviewing the conditions and actions of detention officials and their relation to the Government's legitimate interest in detaining aliens awaiting the conclusion of removal proceedings, reviewing courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.* Given the Government's strong interest in detaining aliens with criminal records who are subject to removal orders and the deference due to the expertise of detention officials, the Third Circuit in *Hope* rejected the argument that detention during the COVID-19 pandemic would amount to unconstitutional punishment where the facility in which the petitioner is housed had taken significant, concrete steps aimed at mitigating the threat posed to detainees, notwithstanding serious pre-existing health conditions

which may render those detainees more likely to suffer serious complications should they contract the virus. *Id.* 327-29.

Turning to deliberate indifference medical claims, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the petitioner] must show the Government knew of *and disregarded* an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application in *unfamiliar territory*." *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the Government has taken concrete steps towards mitigating the medical effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the Government cannot entirely "eliminate all risk" of contracting COVID, notwithstanding even serious pre-existing medical conditions which may exacerbate a COVID-19 infection should one occur. *Id.* at 330-31.

Given Petitioner's criminal history and order of removal, it is clear that the Government has a legitimate interest in detaining him. As Petitioner has not shown an express intent to punish him on the part of the staff of the Bergen County Jail in which he is detained, to succeed on his claim he must show that his conditions of confinement are arbitrary, purposeless, or excessive and therefore unreasonable in light of the Government's interest in detaining him. *Hope*, 972 F.3d at 325-29; *see also Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007). Having reviewed the considerable steps the facility has taken to alleviate the threat COVID-19 poses to detainees such as Petitioner, which are significantly more protective of detainees than those at issue in *Hope*, this Court finds that Petitioner has failed to make such a showing. Steps the Bergen County Jail has taken to alleviate the threat to vulnerable detainees such as Petitioner include operating significantly under maximum capacity, ensuring there are on site or on call doctors and nursing staff at all times, performing intake screenings for all incoming detainees including COVID-19 testing, housing newly arrived detainees in a separate unit, quarantining infected detainees and providing treatment including hospitalization where warranted, the

3

cohorting of those who have been exposed to infected individuals but have not shown symptoms of COVID-19 for fourteen days, and increased cleaning and sanitization. (*See* Document 1attached to ECF No. 19). Taken together, these actions clearly indicate that the facility has taken significant and concentrated action to address the threat of COVID-19, and that Petitioner's conditions remain rationally related to the Government's interest in detaining him, and that Petitioner is not entitled to relief on his conditions of confinement claim. *Hope*, 972 F.3d at 325-29.

Petitioner is likewise not entitled to relief on his medical claim in light of the specific medical and psychiatric treatment he has received while detained and the concrete steps the facility has taken to protect Petitioner and those like him from COVID-19. In each instance in which Petitioner raised an issue to the facilities medical staff – be it his mental health needs, injuries, or dental issues, he was either provided medical treatment or applicable medication to address or monitor the issue. (*See* Document 1 attached to ECF No. 16). As nothing Petitioner has provided indicates that medical staff have been deliberately indifferent to any psychiatric or medical need he has brought to their attention, and as the facility has clearly taken ample steps to address COVID-19, Petitioner has failed to show an entitlement to habeas relief on his COVID-related claims. *Hope*, 972 F.3d at 330-31.

. . . .

In his final claim, Petitioner contends that his continued detention under § 1226(c) in the absence of a bond hearing amounts to an unconstitutional application of the statute in light of the Third Circuit's recent decision in *Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 209 (3d Cir. 2020). In *Santos*, the Third Circuit reaffirmed that detention without a bond hearing under § 1226(c) can amount to an unconstitutional application of the statute where the alien's detention becomes so prolonged as to be arbitrary. *Id.* In determining whether detention has become unconstitutionally prolonged, *Santos* instructs courts to look to several factors – the length of detention and the likelihood that detention will continue for a considerable time, the cause for any delays in the underlying immigration proceedings especially where any such delay is the result of bad faith or carelessness by one of the parties, and whether the conditions under which the petitioner is confined are "meaningfully different from [punitive] criminal detention." *Id.* at 210-11. The first factor – the length of detention – is the most important to be considered and is accorded the greatest weight in determining whether continued detention without bond amounts to

4

> an unconstitutional application of the statute. *Id.* The Third Circuit, however, rejected a bright line rule approach, finding that even detention of over a year may pass constitutional scrutiny, as it is only meaningfully different from criminal detention." *Id.* at 210-11; *see also Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018) (finding that detention of over a year was not arbitrary nor an unconstitutional application of § 1226(c)).
>
> In this matter, Petitioner has been detained for approximately eleven months, a length of time which, standing on its own, is not so prolonged as to amount to a denial of Due Process. *Dryden*, 321 F. Supp. 3d at 502. His underlying removal proceedings concluded with relative expediency, with most delays in those proceedings being the result of Petitioner's requests for extensions or his filing of applications for relief. Given that Petitioner filed his appeal of his order of removal several months ago, and the fact that his detention under § 1226(c) will most likely conclude in a relatively short amount of time absent a reversal of his removal order by the BIA, Petitioner's detention under the statute is not likely to continue for an unwarranted period of time.
>
> As this Court has already concluded for the reasons expressed above that Petitioner's conditions of confinement are distinguishable from punitive criminal confinement, and in light of the fact that the remaining factors – length of detention, likely amount of continued detention under the statute, and the reasons for any delays in immigration proceedings – all weigh against a finding that Petitioner's detention has become unconstitutionally prolonged, this Court finds that Petitioner is not entitled to a bond hearing at this time. Petitioner's amended habeas petition is therefore denied. Given Petitioner's interest in maintaining the privacy of his medical records, and the already limited access automatically applicable to immigration habeas matters, however, this Court grants the parties' motions seeking to seal Petitioner's medical records (ECF Nos. 12, 18) in this matter.

(ECF No. 20 at 4-8).

On March 16, 2021, Petitioner filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). (ECF No. 22-23). In that motion, Petitioner argues that "newly discovered" evidence concerning events which occurred in Petitioner's place of confinement in early February 2021 demonstrate that he was exposed to punitive conditions of confinement or

5

deliberate indifference to his medical needs, and that this Court erred in denying his prolonged detention claim because Petitioner believes this Court did not properly apply the Third Circuit's decision in *Santos*. (*Id.*).

In support of this motion, Petitioner has provided jail medical records for early February 2021. (ECF No. 24). Those records indicate that Petitioner chose to stop taking his medications, and that on February 4, 2021, he did "not wish to take meds any more," and that he understood the risks associated with ceasing his medication. (*Id.* at 2-3). Petitioner also declined follow up mental health care. (*Id.*). On or about February 9, Petitioner requested a COVID test, and as a result was transferred into a quarantine unit while awaiting his results. (*Id.* at 14). In the early afternoon of February 9, Petitioner requested a transfer out of the quarantine unit, but was told he could not be transferred back until after his test results pursuant to jail COVID protocols. (*Id.*). Petitioner thereafter threatened to commit suicide if he was not transferred back to his prior housing. (*Id.*). Petitioner was therefore moved to a suicide watch unit of observation and was referred for mental health treatment. (*Id.* at 14-19). On February 10, Petitioner reported no complaints, and was seen for a mental health follow up during which he reported that he had no further suicidal ideation and would "be able to cope if rehoused." (*Id.* at 24-26). Continued daily monitoring was ordered, however. (*Id.* at 31).

On February 11, 2021, Petitioner's COVID test results came back negative. (*Id.* at 38). When seen by medical staff that morning, he again denied suicidal ideation, but requested to see a psychiatrist to resume his medication. (*Id.* at 40). When seen later that day, however, Petitioner again reported difficulty in his quarantine cell and claimed he would hang himself if kept in quarantine. (*Id.* at 41). Petitioner was moved back to an observation cell. (*Id.*). Petitioner remained under observation until he was seen by mental health services on February 13, 2021.

6

(*Id.* at 63-64). During his February 13 mental health follow up, Petitioner reported anxiety over being returned to a quarantine unit, but denied suicidal ideation. (*Id.* at 68). Petitioner was cleared for release, and was released back into the general population rather than quarantine based on his negative COVID test. (*Id.* at 69-72). On February 16, Petitioner was again seen by a psychiatrist, at which time he requested to placed back on medications, a request which was granted. (*Id.* at 76-77). According to the records associated with this visit, Petitioner had previously told mental health officials that he would continue to report suicidal thoughts if he were placed in quarantine, but ceased doing so as soon as he was returned to his prior housing unit. (*Id.* at 75-76).

While Petitioner's reconsideration motion was pending, on May 17, 2021, Petitioner filed an emergency motion for a temporary restraining order. (ECF Nos. 28-29). In that motion, Petitioner contends that he is likely to be transferred in the near future, that he believes that such a transfer would be contrary to applicable internal ICE guidelines for transfers, and would interfere with his ability to communicate with counsel both before this Court in the event that a bond hearing were ordered, or before the New York state courts in which he is attempting to vacate one of the convictions which undergirds his order of removal. (*Id.*).

On May 18, 2021, the Government filed a response to that motion. (ECF No. 30). In that response, the Government informs the Court that while a transfer had originally been considered, ICE has chosen not to transfer Petitioner at this time. (*Id.*). The Government also argues that this Court lacks jurisdiction to grant a restriction on transfers, and that Petitioner has not shown any policy or constitutional violation sufficient to warrant further relief in this habeas matter. (*Id.*).

**II. DISCUSSION**

**A. Legal Standard**

The scope of a motion for reconsideration brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure is extremely limited, and courts will grant such motions only sparingly. *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). An order of the Court may be altered or amended pursuant to such a motion only where the moving party establishes one of the following grounds for relief: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Id.* For the purposes of such a motion, new evidence "does not refer to evidence that a party . . . submits to the court after an adverse ruling," but instead refers to "evidence that a party could not earlier submit to the court because that evidence was not previously available." *Id.* Evidence which is not newly discovered "cannot provide the basis for a successful motion for reconsideration." *Id.* In the reconsideration context, a manifest injustice will generally arise only where "the Court overlooked some dispositive factual or legal matter that was presented to it," or committed a "direct, obvious, and observable" error. *See Brown v. Zickefoose*, Civil Action No. 11-3330, 2011 WL 5007829, at *2, n. 3 (D.N.J. 2011). Reconsideration motions may not be used to relitigate old matters or to raise arguments or present evidence or allegations that could have been raised prior to entry of the original order. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008).

**B. Analysis**

**1. Petitioner's COVID related reconsideration arguments**

In his motion for reconsideration, Petitioner argues that "new evidence" regarding the events of February 2021 warrant reconsideration of the denial of his conditions of confinement and medical claims and warrant habeas relief. Even putting aside the question of whether Petitioner's February 2021 records are properly considered "new evidence," this Court disagrees.

Petitioner's medical records indicate that Petitioner willingly chose to cease taking his medications, and himself requested a COVID test, triggering COVID policies which resulted in his being placed in quarantine. Petitioner thereafter overreacted to that quarantine placement and threatened suicide. His medical records, however, indicate that the jail took immediate action – scheduling mental health consults and follow-ups, and placing Petitioner on suicide watch, and ultimately releasing him from quarantine following his negative test results. Medical records further indicate that Petitioner was placed back on medication after he finally requested that he resume taking it. Petitioner's "new evidence" is in no way indicative of punitive conditions of confinement or deliberate indifference, and instead merely indicated that Petitioner made certain choices of his own accord and the jail did its best to accommodate and treat him in light of the results of those decisions. These records therefore suggest that the jail took appropriate responsive action to Petitioner's medical decisions and suicidal thoughts, and took appropriate action in response to Petitioner's request for COVID testing. Nothing Petitioner has submitted would therefore have in any way changed this Court's analysis of Petitioner's COVID related conditions of confinement and medical claims, and reconsideration is therefore not warranted as to these claims. *See Hope, Hope*, 972 F.3d at 325-31; *Blystone*, 664 F.3d at 415.

**2. Petitioner's *Santos* related reconsideration arguments**

In his remaining reconsideration claim, Petitioner argues that this Court misapplied *Santos* in denying his request for a bond hearing. Although Petitioner characterizes this Court's decision as a misapplication or mistaken application of *Santos*, Petitioner's argument ultimately amounts to disagreement with this Court's ruling as to the facts analyzed by the Court. Contrary to Petitioner's argument, and as the decision quoted above indicates, this Court directly considered

9

the relevant *Santos* factors, balanced them, and ultimately concluded Petitioner was not entitled to relief because, at the time of the Court's decision, Petitioner had been detained for less than a year, Petitioner's detention was not likely to continue for a great deal longer as he is essentially awaiting the BIA's decision at this point, that Petitioner's immigration proceedings had moved swiftly and that Petitioner was responsible for a good deal of the delay in those proceedings, and that Petitioner was not subject to punitive conditions of confinement as he is detained in a county jail – notably in conditions less restrictive than those applied to county pre-trial detainees and in conditions that the Court found did not amount to unconstitutional punishment without a supporting conviction.[2] Based on these findings, this Court found a bond hearing was not warranted. This conclusion was reached through the appropriate considerations in light of *Santos*, and nothing Petitioner has submitted indicates that this Court erred in reaching those conclusions. *See Santos*, 965 F.3d at 209-11. Petitioner has thus failed to set forth a valid basis for reconsideration, and his motion for reconsideration is denied. *Blystone*, 664 F.3d at 415.

**3. Petitioner's motions to seal his medical records and for leave to file a reply in support of his reconsideration motion**

In briefing the reconsideration motion, Petitioner filed both a motion to seal his February 2021 medical records (ECF No. 25) and a motion seeking leave to file his reply brief. (ECF No.

---

[2] Although Petitioner argues that this Court did not consider whether his conditions of confinement are akin to post-conviction criminal detention, this Court did do so. Although this Court did not elaborate at length, Petitioner is detained in a county jail in a unit separate from pre-trial detainees in at least somewhat less restrictive environs than those detainees. Petitioner is not detained in a prison for post-conviction criminal defendants, as was the alien in *Santos*, and, as this Court discussed in its opinion in addressing *Hope*, nothing in the jail's responses to COVID changed this non-punitive detention into something akin to post-conviction punitive detention. Petitioner's conditions of confinement are therefore not similar to post-conviction criminal detention, and that *Santos* factor does not weigh in favor of a bond hearing.

27). As this Court considered Petitioner's reply in reaching a decision on the reconsideration motion, Petitioner's motion for leave to file a reply is granted. Likewise, as Petitioner has a clear interest in the confidentiality of his medical records, as the Government is not opposed to the motion to seal, and given the inherent privacy interests attached to immigration habeas proceedings, Petitioner's motion to seal his February 2021 medical records is granted.

**4. Petitioner's motion seeking a temporary restraining order**

In his final motion, Petitioner argues that this Court should enter a temporary restraining order enjoining the Government not to transfer him as believes a transfer would interfere with his access to counsel and the state courts in his collateral review hearing as well as to counsel in this matter, and would in any event be violative of an ICE internal policy requiring notice and a reason for transfer be provided to counsel for immigration detainees who are to be transferred under certain circumstances. Injunctive relief, however, is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health v. Johnson & Johnson – Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002) (citation and quotation marks omitted).

In order to establish that he is entitled to injunctive relief in the form of a temporary restraining order, Petitioner must

> demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest." *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998) (as to a preliminary injunction); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187 (3d Cir. 1990).

*Ward v. Aviles*, No. 11-6252, 2012 WL 2341499, at *1 (D.N.J. June 18, 2012). Petitioner, as the party seeking a temporary restraining order, must first demonstrate a "reasonable probability of eventual success in the litigation." *Bennington Foods, LLC v. St. Croix Renaissance Group, LLP*, 528 F.3d 176, 179 (3d Cir. 2008) (citation and quotation marks omitted). To satisfy this requirement, "[i]t is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." *Ward*, 2012 WL 2341499 at *2 (quoting *Oburn v. Sapp*, 521 F.2d 142, 148 (3d Cir. 1975)).

Initially, the Court notes that it is extremely doubtful that this Court has jurisdiction to enjoin his transfer in this habeas matter. Congress has provided the Government with considerable discretion in determining where to detain aliens pending removal or the outcome of removal proceedings. 8 U.S.C. § 1231(g)(1); *see also Calla-Collado v. Att'y Gen.*, 663 F.3d 680, 685 (3d Cir. 2011) (ICE "necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another"); *Sinclair v. Att'y Gen.*, 198 F. App'x 218, 222 n. 3 (3d Cir. 2006). Notwithstanding the right to counsel an alien may have even in his underlying immigration proceedings, an alien "does not have the right to be detained where he believes his ability to obtain representation and present evidence would be most effective." *Calla-Collado*, 663 F.3d at 685. Several courts in this District have therefore found that this Court lacks jurisdiction to enjoin a transfer in an immigration habeas matter, *see G.A. v. Rodriguez*, 20-5922 at ECF No. 29, Letter Order (Document 1 attached to ECF No. 30); *see also I.O. v. Anderson*, 20-13153 at ECF No. 5 (D.N.J. Oct. 26, 2020), especially in light of the fact that such a transfer does not interfere with this Court's jurisdiction to grant appropriate relief on immigration habeas claims. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441

(2004) (District Court retains jurisdiction over properly filed immigration habeas even if petitioner is moved out of the court's territorial jurisdiction). Thus, this Court may well lack jurisdiction to grant Petitioner's injunction request even had he shown an entitlement to such relief.

This Court need not reach the ultimate question of jurisdiction here, however, as Petitioner has utterly failed to show his entitlement to an injunction. First, the Court notes that Petitioner has failed to show any likelihood of success on the merits in this matter – indeed, as this Court has now denied his motion for reconsideration, this matter has entirely finished and he has lost on the merits of his habeas claims already. Any argument as to the underlying merits of his access to counsel or the courts claim he may also wish to raise – which would largely be beyond the purview of this habeas matter – are likewise entirely speculative. Petitioner's arguments arise entirely out of a potential transfer which may not now occur, which may not in any event move Petitioner out of the area surrounding his current place of detention, and in any event is likely to impact Petitioner's access to counsel or the courts in only limited ways.[3] Petitioner's merits claims are thus entirely speculative and do not show any strong likelihood of success on the merits of any claims before this Court. Petitioner's alleged imminent irreparable injury is likewise based entirely

---

[3] Although Petitioner makes much of his need to have close access to counsel and the New York Courts, nothing Petitioner submits indicates that he would not be able to meet with counsel much as he had for the last year – telephonically or electronically – or indicates that his physical presence in the New York courts will be absolutely mandatory for his post-conviction proceedings or any potential future plea hearing. Likewise, nothing currently at hand indicates that he would not be able to attend any such hearing virtually, if not physically, in any event. Although Petitioner argues in his supplemental letter brief (ECF No. 32 at 3), that counsel's experience suggests that his transfer might impact those proceedings, these contentions are largely speculative and fail to take into account accommodations which courts throughout this country have made in regards to hearing matters remotely in light of the COVID-19 pandemic. Under these circumstances, the Court is simply unpersuaded that an adequate showing of an immediate irreparable injury has been demonstrated. Indeed, Petitioner's submissions largely suggest that Petitioner believes that his "ability to obtain representation and present evidence would be most effective" if Petitioner would remain in Bergen County, however, *Colla-Collado* does not authorize relief merely for this purpose. *See* 663 F.3d at 685.

on his own speculative reasoning that his transfer *may* impact his state court post-conviction proceedings, or *may* impact his interaction with counsel in this (now concluded) matter. As Petitioner has failed to show either imminent harm or a likelihood of success on the merits, he is not entitled to injunctive relief even if this Court has jurisdiction to grant it in this case. *Ward*, 2012 WL 2341499 at *2. Petitioner's motion seeking a temporary restraining order (ECF No. 28) is therefore denied.

## III. CONCLUSION

For the reasons expressed above, Petitioner's Rule 59(e) reconsideration motion (ECF No. 22) is **DENIED**; Petitioner's motion for leave to file a reply brief (ECF No. 27) is **GRANTED**; Petitioner's motion to seal his February 2021 medical records (ECF No. 25) is **GRANTED**; Petitioner's motion seeking to have counsel appear *pro hac vice* (ECF No. 31) is **GRANTED**; and Petitioner's motion seeking a temporary restraining order (ECF No. 28) is **DENIED**. An appropriate order follows.

                                                                              s/Stanley R. Chesler
                                                        Hon. Stanley R. Chesler,
                                                        United States District Judge